## CRESCENT BREWING CO. *v.* GOTTFRIED.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 35. Argued October 19, 22, 23, 1888. — Decided November 5, 1888.

Claim 1 of letters patent No. 42,580, granted May 3d, 1864, to J. F. T. Holbeck and Matthew Gottfried, for an "improved mode of pitching barrels," namely, "The application of heated air under blast to the interior

of casks by means substantially as described, and for the purposes set forth," is a claim to an apparatus, and is void for want of novelty.

The process carried on by means of the apparatus was not new, as a process.

The case of *Lawther* v. *Hamilton*, 124 U. S. 1, considered and explained.

In respect to the apparatus, the patentees, at most, merely applied an old apparatus to a new use.

Claim 2 of the patent held not to have been infringed.

THIS WAS A SUIT IN EQUITY, brought in March, 1881, in the Circuit Court of the United States for the District of Indiana, by Matthew Gottfried against the Crescent Brewing Company, founded on the alleged infringement by the defendant of letters patent No. 42,580, granted May 3d, 1864, to J. F. T. Holbeck and Matthew Gottfried, for an "improved mode of pitching barrels."

The specification, claims, and drawings of the patent were as follows:

"Be it known that we, J. F. Th. Holbeck and Matthew Gottfried, both of Chicago, county of Cook, and State of Illinois, have invented a new and useful improvement in pitching barrels, etc.; and we do hereby declare that the following is a full, clear, and exact description thereof, reference being had to the accompanying drawings, making a part of this specification, in which

"Figure 1 is a longitudinal section taken in a vertical plane through the centre of the apparatus which we employ in the operation of pitching barrels, etc. Figure 2 is a horizontal section taken in the course indicated by red line $x$ $x$ in figure 1. Figures 3 and 4 are views of the tabular closing-guard which is applied to the barrels or casks in the operation of heating them. Similar letters of reference indicate corresponding parts in the several figures.

"Before filling casks with spirituous or volatile liquids, it is necessary to render the casks impervious to air, the most common and probably the cheapest method of doing which has been to flow melted pitch or other substance into the pores and joints of the casks while they are in a heated state; but the difficulties hitherto attending this process arise in consequence of a want of some economical means of heating the

casks without burning or seriously charring their inside surfaces.

"My invention has for its object the preparation of casks for receiving pitch or other melted substance suited to the object in view, by subjecting said casks to blasts of highly heated air by means of an apparatus which will be hereinafter described. To enable others skilled in the art to understand our invention, we will describe its construction and operation.

"In the accompanying drawings we have represented one mode of carrying our invention into effect, which consists of a furnace constructed of masonry, as represented by A, figures 1 and 2. This furnace is of a rectangular form, and has a vertical central opening, A', through it. Near the base of the furnace is a grate, $a$, beneath which is the ash-pit, $b$, and above which is a fire-chamber, $c$, which is covered by a lid, $c'$, as shown in figure 1.

"An opening, $d$, is made through the side of furnace A, which forms an external communication with an internal chamber, A', either below the grate or above this grate, as shown in figure 1. This opening, $d$, communicates with a fan-case, B, arranged outside of the furnace, and furnished with a series of rotary wings or fans, $e$ $e$, which may be rotated by any convenient motive power.

"The fans $e$ $e$ create a blast of air through the furnace-chamber A'; this air, rushing through the opening $d$ and through the fire which is built upon the grate $a$, is allowed to escape through the passage $d'$ near the top of the furnace.

"Between this passage $d'$ and the cask which it is desired to heat I form a communication by means of a detachable pipe, E, which connects with a short pipe, E', that is secured around the passage $d'$, as shown in figures 1 and 2.

"The removable pipe E may be made conical, as represented, so that the opening through the head of the cask D need not be very large, and this pipe is provided with a bow handle, $g$, by means of which the pipe can be removed or adjusted in place without liability of burning the hands. The contracted end of pipe E enters a short tube, $h$, which passes through and is suitably affixed to a covering plate, $i$, that is

used to close or partially close the opening, $j$, which is made through the head of the cask. This plate $i$ should be somewhat larger than the opening through the head of the cask, and this opening should be of such form as to admit plate $i$, and to allow of this plate being adjusted, as represented in

figure 1. When this plate $i$ is adjusted on the inner side of the cask-head, opposite the openings therethrough, it may be confined in place by means of a key, $k$, which is passed between a flange formed on the projecting outer portion of the short pipe $h$ and the head of the cask, as represented in figures 1 and 2.

"When a cask which it is desired to render impervious to air is adjusted in proper position, and a communication formed between it and the furnace A, as above described, a fire is made upon the grate *a*, and by means of the blast-fan applied to the furnace the heated products of combustion are forced into the cask and allowed to escape therefrom through an opening at the bottom of covering-plate *i*, as indicated by the arrows in figure 1.

"When the cask thus subjected has become properly heated so that the resin substance within it will readily flow into the pores and cracks or joints in the wood, the parts *i* and E are removed, the opening through the head of the cask properly closed, and the cask rolled about until the melted resin has permeated every pore and interstice in its inside surface.

"Having thus described our invention, what we claim as new and desire to secure by letters patent is

"1st. The application of heated air under blast to the interior of casks by means substantially as described, and for the purposes set forth.

"2d. The use of a removable conductor, E, in combination with a furnace and blowing apparatus, arranged and operated substantially as described.

"3d. The tube-holding plate *i*, in combination with the removable pipe E and blast furnace A, substantially as and for the purposes described."

Infringement was alleged only of claims 1 and 2.

The defendants put in an answer to the bill, a replication was filed, and proofs were taken on both sides. The issue of novelty and patentability was warmly contested. The principal matters relied on in the proofs to show want of novelty in the invention were English patent No. 6901, granted to C. P. Devaux, October 8th, 1835; English letters patent No. 9924, granted to Davison and Symington, November 2d, 1843; English letters patent No. 12,918, granted to Cochrane and Slate, January 3d, 1850; a description found in a volume entitled "Tomlinson's Cyclopedia of Useful Arts, London and New York, 1854," Vol. II, Ham–Zir, page 665, and figure 2015, the thing described being known as the "Pewterer's

Blast;" a description found in a volume published at Braunschweig, in 1854, called " Handbuch für Bierbrauer," at pages 116 to 118; the Seibel machine, first used early in 1857 ; and a description contained in a volume published at Leipsic, in Germany, in 1861, called " Der Bierbrauer," at page 138 *et seq.*

In January, 1882, the Circuit Court, held by Judge Gresham, delivered an opinion in which it was held that the bill must be dismissed on the ground that the patent was void for want of novelty. *Gottfried* v. *Crescent Brewing Co.*, 9 Fed. Rep. 762, and 22 Off. Gaz. Pat. Off. 497. The anticipations especially considered in the opinion of Judge Gresham were the Cochrane and Slate patent; the Seibel machine ; and the " Bierbrauer " publication of 1861. A rehearing appears to have been had of the case, and, in September, 1882, Judge Gresham delivered an opinion, *Gottfried* v. *Crescent Brewing Co.*, 13 Fed. Rep. 479, holding that he had given undue importance to the Cochrane and Slate patent, the Seibel apparatus, and the German publication, and that the patent was sustainable as a patent for mechanism. An interlocutory decree was entered, in October, 1882, holding the patent to be valid as to claims 1 and 2, and to have been infringed as to those claims, and referring it to a master to take an account of profits and damages. On the report of the master, a final decree was entered in favor of the plaintiff, in December, 1884, for a money recovery. From that decree the defendant appealed to this court.

*Mr. Robert A. Parkinson* for appellants.

*Mr. Thomas A. Banning* for appellee. *Mr. Ephraim Banning* was with him on the brief.

As the first and most important claim for the patent is for a process, it is not sufficient to invalidate it to show that furnaces, blowers, and connecting pipes were old in other arts. If all these things were admitted to be old, the patent must still be sustained *as a patent for a process* unless it can be shown that it was old to heat barrels and kegs for pitching

*without removing their heads* by pouring into them a heated blast that would not burn or injure the wood or pitch, produced in a *closed* furnace, located *outside* of the vessel to be pitched, and *between* the keg and the blower, etc. To show that smelting furnaces had a blast of air driven through them by a blower, and that the resulting blast was deoxygenized, cuts no figure. The novelty of the mechanism alone is not all that is involved in considering a process patent.

In *Fermentation Co.* v. *Maus*, 122 U. S. 413, 428, the court said: "It is, therefore, a process or art. The apparatus for carrying out the process is of secondary consequence, and may itself be old, separately considered, without invalidating the patent, if the process be new and produces a new result."

The words " separately considered " pointedly and precisely indicate what must be found, conjoint and coexistent, to constitute a defence to a process patent. The *mechanism* by which a process of this kind is effectuated, *separately* considered, is not enough. It must, of course, be found, but in addition there must be found the *process*, existing and associated with it.

This idea, that where a process is applied by mechanical means such means become essentials of the process, just as the elements of a combination are essential, so that infringement or anticipation depends upon the presence of the *mechanical means* as much as on the presence of the *process*, is perhaps as fully recognized by this court in *Lawther* v. *Hamilton*, 124 U. S. 1, 10, as in any other case. In that case the court, after stating that "there is no new machinery," that "the machinery and apparatus used by Lawther had all been used before," say : " Whilst we are satisfied that the invention is that of a process, it is nevertheless limited by the clear terms of the specification, at least so far as the crushing of the seed is concerned, to the use of the kind of instrumentality described."·

And so we say that the complainant's process is limited by the clear terms of the specification to the instrumentality described, and that to anticipate the patent, or to infringe it, all of the essentials of mechanism and of operation, above pointed out, must be found.

MR. JUSTICE BLATCHFORD, after stating the case as above reported, delivered the opinion of the court.

There has been, as appears by the reports, a good deal of litigation as to this patent.

In June, 1878, in *Gottfried* v. *Bartholomae*, 3 Ban. & Ard. 308, in the Circuit Court of the United States for the Northern District of Illinois, Judge Blodgett held the patent to be valid. The only anticipating devices which appear to have been considered by him were the Davison & Symington patent, of November, 1843, and the Neilson and various other hot-air blasts in smelting furnaces.

The patent was sustained by the decision of the Circuit Court of the United States for the Eastern District of Wisconsin, held by Judge Dyer, December 1st, 1879, in *Gottfried* v. *Phillip Best Brewing Co.*, 5 Ban. & Ard. 4 and 17 Off. Gaz. Pat. Off. 675. The anticipations considered in the opinion of Judge Dyer were the device of one Pierce; the Beck machine; the Davison & Symington patent; the Devaux patent; the Neilson hot-blast patent, granted in England, in 1828; a patent granted in England to one Boville, in 1846; and a patent granted in England to Cochrane & Galloway, in 1818. The Cochrane & Slate patent, the "Pewterer's Blast," the two German publications, and the Seibel apparatus do not appear to have been considered in that case.

The next decision was in June, 1881, by Judge Blodgett in the Circuit Court of the United States for the Northern District of Illinois, in *Gottfried* v. *Conrad Seipp Brewing Co.*, 10 Bissell, 368, and 8 Fed. Rep. 322. The question of novelty was not considered, and the bill was dismissed on the ground of non-infringement.

Then came the decisions in the present case.

In *Gottfried* v. *Stahlmann*, 13 Fed. Rep. 673, in the Circuit Court of the United States for the District of Minnesota, in October, 1882, Judges McCrary and Nelson concurred in the second decision of Judge Gresham in the present case, sustaining the validity of the patent.

It is also stated that Judge Baxter, of the Sixth Circuit, held the patent to be valid.

It is quite apparent from the face of the specification, as it is clear upon the evidence, that the process of flowing melted pitch on the inside, into the pores and joints of casks which were to be filled with spirituous or volatile liquids, such flow- ing taking place while the casks were in a heated state, was not new. The specification states that a difficulty attended such process, because there was no economical means of heat- ing the casks without burning or seriously charring their in- side surfaces. It also states, that, in this view, the invention has for its object the preparation of casks for receiving the pitch, by subjecting them to blasts of highly heated air by means of the apparatus described; that is, the invention is of the apparatus. The specification then describes it. The sub- stance of it is an apparatus consisting of a fan-case arranged outside of a furnace, and furnished with a series of rotary wings or fans, which create a blast of air and force such blast into a chamber and through a fire built upon a grate in the chamber, and thence through such chamber and out of it, and, by means of a pipe, into the cask which it is desired to heat, the heated products of combustion being thus forced into the cask, and then allowed to escape therefrom, so that the cask will be properly heated to admit of the ready flow of the melted pitch into the pores and cracks or joints in the wood in the interior of the cask, when the cask is rolled about.

The first claim of the patent, namely, "The application of heated air under blast to the interior of casks by means sub- stantially as described, and for the purposes set forth," is a claim to the means or apparatus described for applying the heated air under blast to the interior of the casks, and is a claim for mechanism, and not for a process. The evidence further shows that the process was old, and was fully devel- oped in the Seibel apparatus. The only process that is em- bodied in the plaintiff's apparatus is the process of bringing the heated products of combustion, impelled by a blast of heated air rushing through the fire built upon the grate, into direct contact with the interior of the cask, and with the pitch which may cover the interior.

A Seibel apparatus, as used in St. Louis continuously from

1857, was put in evidence and has been produced before this court. It is used by inserting it within the cask to be heated. It consists of an elongated furnace, having a straight perforated cylindrical pipe extending horizontally the entire length along its bottom, one end of the pipe connecting by a conduit with a blower on the outside, which drives a blast of air through the pipe, the blast passing out through the perforations in the pipe and into and through the fire in the furnace on the top of the pipe, whence the products of combustion pass into the cask, into contact with its interior surface, and then out of the cask.

The process of the Seibel apparatus is the same as that of the plaintiff's apparatus. The furnace and its fuel are between the blower and the interior of the cask. The heated products of combustion, being the blast of air either wholly or partially deoxygenated, pass from the fire directly into contact with the interior of the cask. So far as any process is concerned, the processes embodied in the two apparatuses are identical. The fact that in the plaintiff's apparatus the furnace is not thrust into the cask, and that the products of combustion are conducted into the cask through a pipe, does not affect the question of the process.

It is contended by the plaintiff that the first claim of the patent is for the process when applied or operated by an apparatus like that of the plaintiff, situated outside of the cask, and not within it; and reference is made to the case of *Lawther* v. *Hamilton*, 124 U. S. 1, as sustaining the view, that the mechanical means by which a process is applied may be an essential part of the process, and that the process is not anticipated unless the mechanical means of applying it, shown by the plaintiff, existed before, and were applied before to carry on the same process. But the true view of the case of *Lawther* v. *Hamilton* is this: Lawther's patent was for a process of working oil-seeds to obtain oil, by dispensing with the muller-stones before used to complete the grinding. The omission of the muller-stones produced more oil and better oil-cake. The seed, first crushed by heavy rollers, was passed directly from them into a mixing machine, without being

operated upon by muller-stones, which had before been used for grinding and mixing. The crushing of the seed between powerful revolving rollers was retained in Lawther's process, and the seed was transferred immediately from them to a steam mixing machine. This court said that, while the invention was that of a process, it was limited, at least so far as the crushing of the seed was concerned, to the use of powerful revolving rollers to do such crushing. The crushing being stated in the specification to be of such character that each seed was individually acted upon, and the oil cells were fully crushed and disintegrated, the claim was for "the process of crushing oleaginous seeds and extracting the oil therefrom, consisting of the following successive steps, viz., the crushing of the seeds under pressure, the moistening of the seeds by direct subjection to steam, and finally the expression of the oil from the seed by suitable pressure, as and for the purpose set forth." The crushing of the seed in the manner stated was a part of the process. Of course, it had to be done by some kind of instrumentality, and it was held to be a part of the process that the kind of instrumentality should be powerful revolving rollers, whose effect would be to act upon each seed individually, and fully crush and disintegrate the oil cells; but the instrumentality or apparatus was not a part of the process while the operation upon each seed by the kind of instrumentality described was a part of the process.

So far, therefore, as the first claim of the patent is a claim to a process, it is fully anticipated in the process carried on by means of the Seibel apparatus.

Considering the first claim of the patent as a claim to the apparatus used for applying the heated blast to the interior of the cask, the apparatus existed before. It is found in the Cochrane & Slate patent of 1850, which shows a blast passing through the fuel in a furnace, and a pipe extending from the furnace into the interior of a flask or mould intended to be heated, through which pipe the blast, consisting of the heated products of combustion, was conveyed into such interior. The deoxygenated blast was applied to the heating and drying of the inner walls of the receptacle into which it

was carried. There was no invention in applying the apparatus to a cask instead of a flask. It would require only ordinary mechanical aptitude, and not invention, to make the mouth of the exit pipe carrying the heated products of combustion of a proper size to enter the bung-hole or other orifice of a keg or a cask, instead of entering a flask or mould.

So, too, the description of the "Pewterer's Blast," in Tomlinson's Cyclopedia of 1854, shows the plaintiff's apparatus. It is there stated that the pewterers have a kind of blow-pipe, or hot-air blast, consisting of a common cast-iron pot, with a close cover, containing ignited charcoal, and termed a hod. This pot has a nozzle leading into it, which supplies air from bellows worked by the foot, and another nozzle leading out of it, which directs the current of hot air upon the article to be soldered. The drawing of this apparatus is as follows:

*Fig. 2015.*

In this apparatus there is a blast driven through a fire in a closed receptacle, in such manner that the heated products of combustion are carried out of a nozzle and directed where needed. Whether the nozzle terminates in the air or in the interior of a cask or keg, or whether the deoxygenated blast which leaves the nozzle is partially reoxygenated or not before reaching its objective point, does not affect the identity of the apparatus.

In reference to both the Cochrane & Slate patent and the "Pewterer's Blast" apparatus, the patentees have, at most, merely applied an old apparatus to a new use, without any change of its constituent elements or of its mode of operation. In fact, the defendant's apparatus is to all intents and purposes, a faithful copy of the "Pewterer's Blast" apparatus.

Under these views, it must be held that the first claim of the patent is invalid.

As to the second claim, there is no infringement, the defendant's apparatus having no removable conductor corresponding to the removable conductor, E, of the second claim. The defendant's pipe is screwed fast to the furnace, and cannot be removed while the machine is in use. It is cast separate from the furnace, for convenience of renewal in case of the breakage of either it or the furnace. The movable conductor, E, is described in the specification of the patent as a pipe provided with a bowhandle, by means of which it can be removed or adjusted in place, without liability of burning the hands. The defendant's pipe which enters the keg or cask is not removable or detachable in this sense.

For these reasons the decree of the Circuit Court is:

*Reversed, and the case is remanded to that court with a direction to dismiss the bill of complaint, with costs.*

---

GAFF, EXECUTRIX *v.* GOTTFRIED, No. 36. HACK *v.* GOTTFRIED, No. 37. Appeals from the Circuit Court of the United States for the District of Indiana. MR. JUSTICE BLATCHFORD delivered the opinion of the court. These are appeals by the defendants in two suits brought by Matthew Gottfried, in the Circuit Court of the United States for the District of Indiana, upon the same patent involved in the case of *The Crescent Brewing Co.* v. *Gottfried,* just decided. The proofs are the same as in that case, and the same conclusions are reached. *The decree in each case is reversed, and each case is remanded to the Circuit Court with a direction to dismiss the bill of complaint, with costs.*

Mr. *Robert H. Parkinson* for appellants.

Mr. *Thomas A. Banning* and Mr. *Ephraim Banning* for appellee.