## CITY OF CHICAGO v. STRAUSS BASCULE BRIDGE CO.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1919.)

No. 2677.

PATENTS ☞328—FOR BASCULE BRIDGE; VALID AND INFRINGED.
    The Strauss patent, No. 995,813, for improvement in bascule bridges, *held* not anticipated, valid, and infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the Strauss Bascule Bridge Company against the City of Chicago. Decree for complainant, and defendant appeals. Affirmed.

Appellant was found to be an infringer of claims 9 and 10 of patent No. 995,813, granted June 20, 1911, to J. B. Strauss, for improvements in bascule bridges.

Those claims read as follows:

"9. A bridge comprising a movable section, a stationary cross-support therefor; the rear end of the movable section having truss members which completely surround the said cross-support.

"10. A bridge comprising a movable section, two upright supports therefor, one on each side of the roadway, a stationary cross-support connected with said upright supports, and upon which the movable section is mounted; the main trusses of the movable section ending at the said cross-support, the rear end of the movable section having truss members above and below said cross-support, and arranged so as to at all times be free from the cross-support when the movable section is lifted."

Trial was had on oral testimony and exhibits before a master. With his

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

return of the evidence he submitted a very full finding of the facts on which he based his conclusions that the claims in suit were valid and infringed. This report, after a hearing on appellant's exceptions, was confirmed, and thereupon the court entered the decree from which this appeal is taken.

On the question of the patentable novelty of the claims in suit the master found as follows:

"In 1903 patent No. 738,954 was issued to J. B. Strauss on an improvement in a bascule bridge. Defendant's Exhibit 3. Defendant contends that Figures 7 and 8 of this patent show a bascule bridge construction having every element of claims 9 and 10 of the patent in suit, with the single exception that the truss members in the 1903 patent only partially surround the stationary cross-support, whereas the truss members in the 1911 patent completely surround the cross-support; that it did not require invention to provide the Strauss 1903 structure with truss members completely surrounding the stationary cross-support shown in the patent in suit, as engineers are familiar with the practice of compensating for the removal of any diagonal in a truss member by supplying additional trusses; that combining the stationary cross-support, movable span, and truss members completely surrounding the stationary cross-support, as shown in the patent in suit, is nothing more than an aggregation of old elements acting in the old way and producing no distinctive or new results when compared with the Strauss 1903 patent.

"Defendant also contends that other patents prior to 1903 and other structures show a trussing around a movable cross-support, but does not claim they show trusses around a stationary cross-support, but that, taking the structure of these former patents and the structure of the 1903 patent together, they show that before 1911 all that appears in the 1911 patent was known to the prior art.

"Volume 14 of the publication entitled 'Industries,' of which photographic copies of pages 316, 317, and 324 were introduced in evidence and marked Defendant's Exhibits 1a and 1b, was published in 1893. It is a foreign publication, consists of printed matter and drawings, and illustrates a bridge over the Tiber river near Rome, Italy. The defendant contends that these drawings show a bridge construction wherein the movable section comprises a series of plate girders, each provided with an opening through which a horizontal stationary cross-support projects, mounted on suitable standards on each side of the roadway; that the movable section in the Tiber river bridge construction is shown mounted upon trunnions that rest on the stationary cross-support with the rear end of the movable section completely surrounding the cross-support, so as to permit the lifting of the bridge sufficiently to provide proper clearance; that under claims 9 and 10 of the patent in suit the bridge may be of truss construction, girder construction or construction of any other mechanical form that is practical in engineering, and that therefore the Tiber river bridge, as shown by the drawings, wholly meet claims 9 and 10 of the patent in suit; that the drawings, Defendant's Exhibits 1a and 1b, are sufficiently clear to enable one skilled in the art to understand the mechanical construction shown; and that the Tiber river bridge construction anticipates claims 9 and 10 of the patent in suit.

"With these contentions I do not agree. The Strauss 1903 patent shows a bridge entirely above the trunnions and the support for the trunnions. It does not show a bridge where the truss members surround the cross-support. The problem presented to Strauss was how, in heavy weights and spans, where a deep truss must be used, like that of the Washington street bridge, to support the inside end of the trunnions that sustain the truss and about which it revolves, without having this support interfere with the space for the counterweight, and where the truss was of such construction that any support for the inner end of the trunnions must project through the truss itself. In doing this, and arranging a construction that would permit the bridge to open to a sufficient degree, Strauss had to invent or devise a way to truss around the cross-support without making use of the triangle form of construction. This problem had not before then been solved. If engineers had tried it, they had met with failure.

"The basis of the truss is the triangle; it is the only figure the shape of which cannot be changed without changing the length of one or more of its sides. To project a cross-support through one of these triangles forming the truss, and still permit the bridge to open sufficiently, could not be done; one or more of the triangular members would strike the cross-support and stop further and sufficient movement to secure the desired opening, and if one of the members of one of these truss triangles is out, or removed to give more space, the truss will fail. Strauss solved this problem by departing from the accepted practice in the art. He used in this truss, in place of a triangle, a quadrilateral, and this quadrilateral gave him sufficient space through which to project the cross-support for the inner end of the trunnion and yet permit the bridge to be sufficiently opened without any member of the quadrilateral striking the cross-support. It also permitted him to use a very deep truss. While this quadrilateral on its face departs from the triangle, it does not depart from the law of the triangle, for Strauss so arranged the parts that two sides of the quadrilateral were so connected with triangles in the truss as in fact to make these two sides immovable as to each other; two sides of the quadrilateral in mechanical effect, though not in form, one side of a triangle. This quadrilateral form of construction in mechanical effect had all the functions of the typical triangular form, but with an additional and new result, in that it permitted the bridge to open a sufficient amount without any member striking the cross-support projecting through the quadrilateral, which is the prime function of the bascule bridge.

"In addition to the Strauss patent, No. 738,954, Defendant's Exhibit 3, already considered, defendant introduced the Lamont patent, No. 544,733, Defendant's Exhibit 4, the Cowing patent, No. 672,848, Defendant's Exhibit 5, the Brayton patent, No. 632,985, Defendant's Exhibit 6, the Vent patent, No. 683,627, Defendant's Exhibit 7, the Wetmore patent, No. 349,020, Defendant's Exhibit 8, and the Emery patent, No. 398,956, Defendant's Exhibit 9, in support of its contention that there was no novelty in the patent in suit and that all of the elements combined were old in the art and produced no new result. A consideration of these patents separately or together discloses that they fail to indicate how they might be combined or arranged so as to accomplish the result Strauss sought to accomplish. Claims 9 and 10 of the patent in suit are not anticipated by these patents, nor do they show anything to negative invention or novelty of the structure set out in claims 9 and 10 of the patent in suit.

"The photographic copies of pages from the foreign publication 'Industries.' Defendant's Exhibits 1a and 1b, illustrate a bridge over the Tiber river, and consist of printed matter and drawings. The chief purpose of the drawings seems to be to illustrate the hydraulic mechanism for raising and lowering the span shown in this bridge. The hydraulic counterweight is commented upon and described in detail in the printed matter shown on the copies, while the remaining structure of the bridge is not mentioned in the printed matter. While the drawings in a way illustrate the entire structure, they appear to be sufficiently definite only to make plain the construction of the hydraulic counterweights. The Tiber bridge is hardly comparable with the Washington street bridge. The Tiber bridge is small, narrow in width, of girder and not truss construction, has a short span and a long counterweight, and the counterweight and span weigh 73 tons and 1,200 pounds; while the Washington street bridge is of truss construction, of dimensions requiring deep trusses, and the counterweight and span weigh about 2,000 tons. The movable span of the Tiber bridge is mounted on high piers, so that a long counterweight arm may be used without a counterweight pit; such construction could not be used over the Chicago river at Washington street.

"The drawings and descriptive matter shown in this publication do not clearly show what the construction is, other than the hydraulic operation of the counterweight, and do not disclose with sufficient clearness to one skilled in the art any structure that would anticipate claims 9 and 10 of the patent in suit."

George A. Chritton, James R. Offield, and Russell Wiles, all of Chicago, Ill., for appellant.

Donald M. Carter and Stuart G. S. Shepard, both of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). Beyond approving the master's findings and conclusions as sufficient answers to appellant's contentions in chief, there is one position, taken in an additional reply brief, which should be stated and met.

As appears from the master's finding, and also from the specification of the patent, Strauss's particular construction of "truss members above and below said cross-support, and arranged so as to at all times be free from the cross-support when the movable section is lifted," or "truss members which completely surround the cross-support," was a quadrilateral, two sides of which formed a re-entrant angle, and which was saved from distortion by having each of the re-entrant sides itself a side of a triangle in the general truss. On this specific disclosure Strauss framed and was allowed the broad claims in suit.

Additional counsel in the additional brief assert that all that Strauss invented was his specific quadrilateral; that it was merely an accident that appellant used that form; that appellant can easily provide its openings for the stationary cross-supports by using other polygonal forms or even a triangle; that the claims, being clearly broader than the actual invention, should not be recast through a judicial reissue; and that appellee's only remedy is through a Patent Office reissue.

We should of course agree with counsel, if we could accept his prime assertion that the Tiber bridge publication disclosed the generic invention of a bascule bridge having openings in the side walls (of truss or equivalent construction) for the stationary cross-support. There is no verbal description of the parts in question. In the drawings and photographs in the publication the experts for appellant see the Strauss bridge, while appellee's experts find no suggestion of it. Our own examination leaves us uncertain of the actual construction of the portions of the Tiber bridge in question. What we are certain of is that the foreign publication does not "contain and exhibit a substantial representation of the patented improvement, in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains to make, construct, and practice the invention to the same practical extent as they would be enabled to do if the information was derived from a prior patent." Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33.

We conclude, therefore, that Strauss's specific disclosure warranted the allowance of the claims in suit.

The decree is affirmed.