## MILLER et al. v. LIFE SAVERS, Inc.

### No. 18.

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1933.

Everett & Rook, of Newark, N. J. (Morris Kirschstein, of New York City, and Harry B. Rook, of Newark, N. J., of counsel), for complainants-appellants.

Gifford, Scull & Burgess, of New York City (George F. Scull and James F. Hoge, both of New York City, of counsel), for defendant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is the usual patent infringement suit, brought for infringement of United States patent No. 1,726,113 to Eseck Miller. He states in his specification that his invention relates in general to candy-making machines and more particularly to a machine for making annular or ringlike pieces of candy, and that it is especially intended for use in making candy from material which during manufacture is tacky, taffy-like, or pasty in consistency and hardens after a period of time. He adds that: "It has been found to be practically impossible to punch annular pieces of candy from such material because the material strings and adheres to the edges of the dies, so that not only are the dies short-lived, but the pieces of candy have rough edges." His device as described in the specification was for making annular or ringlike pieces of candy by first forming from the plastic batch a strip of the size and shape necessary to produce one annular piece of candy. He provided means for curling this presized and shaped strip about a post of a diameter substantially equal to the size of the hole to be made in the candy. He then provided for depositing this curled rod of candy in a die cavity to be there acted upon by a pair of dies to give it the final shape and to close the seam between the meeting ends of the rod resulting from the curling operation. Finally he provided means for ejecting the annular piece of candy from the mould.

Miller originally designed the machine of his patent in order to produce the so-called "balloon-tire" lollypop. He made three machines which were used commercially for that purpose. By means of two pairs of rolls, the peripheries of which had semicircular grooves, he first shaped the batch of candy into a ropelike form so that the cross section of the strip fed into the machine should be the same as that of the finished product. The candy had to be cool enough to maintain its

ropelike shape after a piece was cut off from the incoming strip. Miller provided a series of posts on a dial or turntable projecting from half-round die cavities. This turntable was so operated as to rotate step by step or intermittently. One of these posts is brought by this intermittent rotation into a position in front of the center of a cut off presized bar of candy, of the size and shape necessary to produce one annular tablet. Forming fingers, mounted on a head, are moved towards the candy bar, push the center of the bar against the pin on the dial, and then, by their motion, bend the end of the bar around it until the circle is closed. After the ends of the bar are thus curled into an annulus, the forming fingers are opened and withdrawn, and the dial is then rotated clockwise into its next position so that the annular piece of candy comes under a compressing die with a central opening to receive the post around which the rod of candy has been curled. The descent of this upper die pushes the curled piece downward into the cavity surrounding the post and by pressure gives it complete symmetry and irons out any wrinkles and recesses. As the intermittent operation of the machine proceeds, the die member, which normally is below the surface of the turntable, is projected upwards, freeing the annular piece of candy from the post and leaving it in a position to be removed from the machine. The posts and dies in the foregoing machine, of which a model (Exhibit 2) was produced at the trial, were of the size for making "balloon-tire" lollypops and were very much larger than would be suitable for making the well-known annular "Life Saver" candies for which the alleged infringing machine of the defendant is used. Miller contends that the device we have described complies with the teachings of the patent in suit and that the sizes of the posts and dies can readily be so reduced as to form "Life Savers." He says that he made a somewhat similar machine for the defendant that produced perfect "Life Savers" described in United States patent No. 1,755,263, while the defendant insists that it not only produced only one-fifth as many annular "Life Savers" as did the defendant's machine, but that they had such a large number of defects as to make it inoperative for commercial purposes.

The defendant's machine, as illustrated in Complainants' Exhibit 4, does not operate step by step, i. e., intermittently, but continuously. The candy fed into the machine is formed and sized by rollers, as in Miller's device, but it does not have the form of a rope or rod as described in the patent in suit. It is a strip thinner and higher, with flat sides. The die cavities in defendant's machine are a plurality of cylindrical openings in a flange on a rotating drum with posts projecting from their centers. There is an upper rotating wheel with circular indentations spaced to correspond to the die cavities in the flange of the drum. As the material is fed between the two rotating members, the teeth of the upper wheel cut off enough material to form a single finished piece. These teeth act roughly to push the material around the post into the die cavity. After this is done, the left-hand die member is progressively moved into the die cavity so as to compress the candy piece in the cavity between the end die members and mould it to the shape desired. After the annular piece has been completely formed by this compression, the right-hand die member is retracted from the die cavity while the left-hand die member is pushed through the die cavity so as to eject the finished piece.

The claims in the patent relied on are 1, 6, 7, 8, 9, and 10. Each of these claims calls for "means for curling" the plastic rod around the post. The specification states (p. 1, 1. 33) that one of the objects of the invention "is to provide novel and improved means for curling the piece of material about the die post and depositing the same in the die cavity."

Each claim likewise calls for feeding the material "in the form of a plastic rod," "in the form of a rod," or in the form of "a rodlike piece" to the place where it is to be curled.

Mr. Frederick Ray, an expert of large experience, thought it necessary to the working of the Miller device that the rod of candy to be curled should not only have a definite length but a definite shape. He said that, after curling, it must be "substantially of the final size and shape before that little final pressure can be applied, otherwise there are fins and unfilling of the die cavity as a result." Record, p. 113. But, irrespective of this particular criticism, it is clear that Miller formed a short rod of length and diameter just sufficient to fill the die cavity when bent around the central post. The defendant does no such thing. On the contrary, it cuts off a "gob" of candy having no relation to the shape of the finished product. The lower wheel of defendant's machine carries a series of mould cavities into which this piece of candy is forced, each of which cavities has a pair of side dies. Mr. Ray stated that because the core forms a portion of the surface of the

mould in defendant's machine there are certain surface elements of this mass which are in the form of circles, but their relation to other elements in the mass has been entirely changed. Folio 524. He proceeded to compare the moulding operation of the defendant's machine with the curling operation in Miller's device thus:

"Now, in an ordinary bending operation, the elements of every part of the initial bar bear the same relation to the elements of the bent bar. There is no change in their relation except the elements at the outside have been opened out a little further apart, and the elements on the inside have been brought together a little bit under compression; that is what would be a true bending operation. There is one line of elements which has what is called a neutral axis, which does not change. It is just bent into a circle, but the elements all along that are just the same distance apart. That is bending. Now, in the operation of this machine, there is a crushing down and a plastic flow, and a little particle that may be at one point at one time, you cannot tell where it is in the finish or in the lump that is cut off—one point has traveled to some distance; there is no definite relation to these particles after cutting this off or crushing it down in the mold. That is the difference between the two types of operation." Record, pp. 175, 176.

The effect of the toothed upper disc or wheel of defendant's machine in cutting off and deforming the piece of candy so severed is shown in Defendant's Exhibits D and E. They clearly indicate that the operation of the defendant's machine depends on plastic flow moulding, rather than curling. In other words, the cut off rod in Miller's machine is curled to the size and shape finally attained, and the dies do little more than give the curling piece complete symmetry, whereas the dies in defendant's machine actually mould a formed "gob" of candy into an annular piece.

 Miller's machine follows essentially the teachings of United States patent No. 819,-543 to Hart. To be sure the Hart patent related to a shaping by bending or curling of a rod of metal soft enough to be bent without changing its cross section, but the operation in the case of a plastic rod of candy and a rod of soft metal is similar. In each patent the function of the machine is to produce small annular pieces by a curling process. While the Hart patent might require some modifications for candy making, it taught a practical way of curling a plastic rod around a post in order to produce an annular ring for compression between dies so as to give it complete symmetry. The validity of the Miller patent was assumed by the court below, and has hardly been questioned. We do not say that it involved no invention over Hart, but only that the latter patent so narrowed the field of invention that Miller is not entitled to claim that he originated the process of curling a plastic substance of predetermined length and diameter about a post and of then compressing it to eliminate irregularities of form. It is true that Hart showed no die cavities because his material was so stiff as not to require them, but the faces of the two co-operating members 2 and 5 in the Hart patent, if hollowed out, would give the desired shape for compressing a curled rod of candy. It is well established that, if a device in another art can be fitted by ordinary mechanical skill to perform the function of a patent under judicial consideration, it is a pertinent reference to determine the scope of the claims. Berlin Mills Co. v. Proctor & Gamble Co., 254 U. S. 156, 41 S. Ct. 75, 65 L. Ed. 196; Crescent Brewing Co. v. Gottfried, 128 U. S. 158, 9 S. Ct. 83, 32 L. Ed. 390. We think that Miller may be said to have in general followed Hart and cannot properly claim the broad rights of a pioneer inventor.

The defendant did not follow the curling or bending device of Hart, but employed a means of cutting off "gobs" of plastic hard candy and moulding them into a desired shape under pressure resembling that shown in United States patent No. 336,839 to Collum. Collum used no post, and simply moulded his roll of candy by compression in the die cavity. But the function of the post in defendant's machine is primarily to produce the hole in the candy, whereas in Miller's device it is to curl the candy as well as to make the hole. Mr. Ray testified that the post in defendant's machine has no useful function except to furnish the hole. Complainants' witness Taylor, on the other hand, said that the post definitely furthers the moulding process, and that without it the moulding of annular tablets would be impracticable. But the experiments on which Taylor's opinion was based were made with clay, and his conclusion was qualified by the admission that the defendant's process would work if a lunette-shaped piece of candy were placed on one side of the die cavity and not curled at all, provided the machine was kept cool enough. Folio 772.

The complainants insist that, because there is *some* curling of the "gob" of candy

about the post in defendant's machine, the Miller patent is infringed. But in defendant's machine the "gob" of candy does not encircle the post more than three-fourths of the way at best. The strip is fed into the machine and cut off and deformed by the teeth of the upper wheel meshing with the posts of the lower drum. It must be moulded by pressure in order that it may encircle the post or have the form of an annular tablet of a constant diameter. If it be assumed that this partial encircling of the post assists defendant's moulding process, it falls so far short of the curling taught in the Miller patent that it does not merely involve an impairment of function, but involves a completely different way of making annular tablets.

We hold that defendant does not infringe because it does not employ the curling process described in the Miller patent. We also hold that, even if the defendant may be regarded as using such a process to a slight degree, the use is quite accidental as regards defendant's moulding process and of no especial advantage in a candy ring of constant diameter. The defendant's machine has no "means for curling" a plastic rod of constant diameter about a post such as Miller shows and for thus making an annular tablet in substantially complete form prior to compression.

For the foregoing reasons, the patent is not infringed.

Decree affirmed.