**MEAD JOHNSON & CO. v. HILLMAN'S, Inc.**

No. 8192.

Circuit Court of Appeals, Seventh Circuit.

May 21, 1943.

Rehearing Denied July 6, 1943.

Bertha L. MacGregor, of Denver, Colo., Chritton, Wiles, Davies, Hirschl, Schroeder & Merriam, Russell Wiles, Geo. A. Chritton, and Jules L. Brady, all of Chicago, Ill., for plaintiff-appellant.

Wm. McSwain, of Chicago, Ill., S. Warwick Keegin and Semmes, Keegin, Beale & Semmes, all of Washington, D. C., and West & Eckhart, of Chicago, Ill. (Lee M. Robinson, of Washington, D. C., of counsel), for defendant-appellee.

Before SPARKS, and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Plaintiff charged defendant with infringement of Patent No. 1,990,329, now owned by the plaintiff, issued on February 5, 1935, to Lambert D. Johnson and others. Infringement of Claims 5 and 6[1] of the patent was charged by reason of defendant's sale of Gerber's Cereal Food and Gerber's Strained Oatmeal, manufactured by Gerber Products Company of Fremont, Michigan.

The principal defense was invalidity and non-infringement. The District Court found infringement, but concluded that the claims were invalid because of Braunbeck United States Patent No. 1,011,730, related Braunbeck British Patent No. 9528, and in view of the general knowledge in the cereal art. Accordingly the complaint was dismissed for want of equity. To reverse the decree, plaintiff appeals.

The product of the patent is a dry, precooked cereal in the form of small fragile flakes, suitable for infant feeding, which the plaintiff manufactures in accordance with the preferred procedure set out in the patent and which since 1933 it has been selling to the public under the name of "Pablum." It is manufactured by mixing several ground raw cereals and certain additive ingredients with a predetermined quantity of water and then thoroughly cooking it in a closed steam jacketed pressure cooker, after which it is dried by means of drum driers or drying rolls.

In 1939 Gerber Products also began selling its ready-to-eat infant's cereals. These cereals are thin fragile flakes of the same general type as those of Pablum. They differ, however, from plaintiff's product in that the Cereal Food is composed principally of wheat and the Strained Oatmeal, of oatmeal.

From the record we learn that ease and rapidity in the digestion of a cereal food and the ability of the food to hold a large ratio of water in suspension are important factors where the food does not stay in the digestive tract as long as normally because of some upset condition; that a cereal product suitable for infant feeding should provide the proper calories, have the right distribution of food elements, and be easily digestible, because an infant's first few months of life present a heavy load on a weak and undeveloped digestive system.

Notwithstanding the art of cereal foods is old and that the patent in this case falls within the art, a cereal product can yet be patented and will be sustained where

---

[1] (5) A dry, pre-cooked cereal product suitable for infant feeding consisting of particles having porous construction throughout, and extremely quick fluid absorptive properties, being quickly convertible by the addition of fluid of any temperature into a stable suspension, and having the taste, appearance and physical characteristics of a readily digestible cooked cereal, said product being further characterized by dextrinization and abnormal distortion of the starch granules, by practically complete absence of clumps of starch granules, and by practically complete absence of typical or characteristic starch granules of the grain used in the product.

(6) A dry, pre-cooked cereal product consisting of particles having porous construction throughout, the walls defining the pores being thin and fragile, and having extremely quick fluid absorptive properties, being quickly convertible by the addition of fluid of any temperature into a mush or porridge free from lumps, and having the taste, appearance and physical characteristics of a readily digestible cooked cereal, said product being further characterized by dextrinization and abnormal distortion of the starch granules, by total disintegration after being wetted, by practically complete absence of clumps of starch granules, and by practically complete absence of typical or characteristic starch granules of the grains used in the product.

there has been a real contribution to the art. To this art, the plaintiff claims that its patent contributed something different from anything previously known in the art. The thing achieved, says the plaintiff, consisted in producing a mush which is lump-free, holds a very high ratio of liquid in suspension, is readily digestible, and can be instantly prepared for the baby by merely taking a tablespoon or two of the product and adding hot or cold milk.

The record discloses that in 1933 when Johnson et al. filed their application for a patent and in 1935 when the patent was issued, there were already in existence patent grants to Braunbeck covering a process for opening or disintegrating grains, the grains being subjected to a steaming and cooking process of such intensity that the form of the cells was entirely destroyed. Those patents, British Patent No. 9528 issued October 11, 1906 and United States Patent No. 1,011,730 issued December 12, 1911, disclose and describe a thoroughly cooked and dried flour (cereal product) produced by crushing the grain, the product leaving the rollers in the form of disintegrated flakes which are then reduced by a milling process to flour which swells and immediately absorbs a great quantity of water when brought into contact therewith. As observed by the District Court, the principal distinction between the two Braunbeck patents is that in the United States Patent the material scraped off the rolls is "in the form of extremely fine flakes," while in the British Patent the material is scraped off the roll "in the form of an extremely fine skin of even thickness throughout."

The District Court found, and there is evidence supporting the finding, that the process described in the Braunbeck patents and the process in the Johnson patent were substantially alike (in each the grain being subjected to a thorough cooking, the pulp formed by the cooking being fed between the rolls of a double drum drier) and that the products from the rolls of the Braunbeck patents are identical in all patentably significant respects to plaintiff's products, thus anticipating Johnson.

The plaintiff, however, argues that while it is true that the Braunbeck drum product is the same as the Johnson product, the drum product is made by Braunbeck only to get the cooked mush rapidly dried to a state where it can be ground into a flour, and that the Braunbeck patents do not teach its unobvious advantages as an in-

fant's food and the very great convenience of instantly reconstituting it into a true mush when mixed with liquid. In other words, that Braunbeck's product is an intermediate product, unappreciated and not the kind of a disclosure which anticipates a subsequent patent, which specifically teaches the world to make dry pre-cooked cereal flakes with certain definite characteristics and which recognizes and teaches the advantages of such a product as an infant's food.

■ To be sure, the Braunbeck patents must stand on their own published disclosures and can be considered as teaching the art only those things that can be found in them. Skelly Oil Co. v. Universal Oil Products Co., 3 Cir., 31 F.2d 427, and City of Chicago v. Strauss Bascule Bridge Co., 7 Cir., 261 F. 358.

According to Johnson et al. they were the first to originate and develop a process which produced a mush which is lump-free, holds a high ratio of liquid in suspension, is readily digestible, and which can be instantly prepared for the baby. The question we are called upon to solve is whether the prior patents disclosed such characteristics and advantages and taught the art what Johnson teaches, thus determining whether what Johnson accomplished amounts to invention.

At this point, it is well to note that the record discloses evidence tending to prove that there is no difference in digestibility between a cereal in flake form and one in flour.

Plaintiff requests us to hold valid the process by which it manufactures "Pablum" because it is readily digestible and because of the extreme convenience in feeding that product to infants. A convenience which ensures the baby's getting its cereal when it should get it, regularly, and at an early age. But it has been held that there is nothing novel in the provision of a highly digestible and thoroughly pre-cooked cereal product, Sanitas Nut Food Co. v. Voigt, 6 Cir., 139 F. 551, and that there is no invention in the mere fact that a product is more readily prepared for immediate use. Glue Co. v. Upton, 97 U.S. 3, 24 L.Ed. 985.

Plaintiff also contends that an unobvious advantage of "Pablum" is its ability to hold a very high ratio of liquid in suspension, about twelve times its own weight in liquid.

■ It will be enough to say that the claims make no mention of this property.

All that the Johnson patent says about fluid absorptive properties of the product is that the material has "extremely quick" fluid absorptive properties. Even if the claims did recite that the product was characterized by its ability to hold a very high ratio of liquid, patentability could not be predicated thereon, since the ability to absorb a large amount of water is merely a broad statement of an attribute or function of the product, and the rule is that functional statements cannot be availed of to define over the prior art. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402.

Plaintiff also contends that it cannot be said that Johnson followed Braunbeck, and in support of the contention that an intermediate product in a previously known process does not anticipate a later patent claiming such intermediate product, plaintiff cites Gray Telephone, etc., v. Baird Mfg. Co., 7 Cir., 174 F. 417; Mosler & Co. v. Lurie, 2 Cir., 209 F. 364; Pittsburgh Iron, etc., v. Seaman-Sleeth Co., 3 Cir., 248 F. 705; In re Fischer, 63 F.2d 264, 20 C.C.A., Patents, 891; In re Madsen, 109 F.2d 242, 27 C.C.A., Patents, 885. Those cases, we believe, are distinguishable. The intermediate structures, devices, or products in those cases were unknown to the patentees, nor were they known or appreciated by the public. Consequently it could not be said that the patentees had invented that for which they had given no specific direction. Such is not the fact in our case.

Prior to Braunbeck, no process had been employed which would completely disintegrate grains. Braunbeck sought a process by which complete disintegration could be completed. He discovered that by cooking the grain to a pulp the cells would be completely destroyed, and that by crushing the pulp between highly heated rollers the disintegrating process would be completed and perfectly disintegrated flakes would be discharged, producing a food product which could be quickly prepared and which was suitable for general purposes (a general food product). The drying on the drums or hot rollers was not only for the purpose of drying the grain, but also for the purpose of bursting open the grains to form a paste, the film of which is then converted into a dry substance.

The law is well settled that if a product in the art can be fitted by those versed in the art to perform the function of a patent under judicial consideration, it is a pertinent reference to determine the scope of the claims, Miller v. Life Savers, 2 Cir., 62 F.2d 513, and to merely carry forward a known principle or change in form, size, proportions or degree, or in doing the same thing in the same way by substantially the same means, with better results, is not of itself invention. Tropic-Aire, Inc. v. Cullen-Thompson Motor Co., 10 Cir., 107 F.2d 671, 674.

As we have already noted, the Johnson product is the same as the Braunbeck drum product, and since Braunbeck clearly and sufficiently described the essential characteristics of his product, it seems to us that with the knowledge disclosed by Braunbeck, one skilled in the art had a guide or chart enabling him to appreciate and recognize the new use of the Braunbeck product. Berlin Mills Co. v. Procter & Gamble Co., 254 U.S. 156, 41 S.Ct. 75, 65 L.Ed. 196.

From the testimony of expert witnesses it appears that "Zwieback" and "Holland Rusk" are cereal products which are thoroughly cooked and readily digestible by an infant of four months or even younger and that when these products are crumbled or ground and mixed with milk or water, they form a mush for infant feeding.

We are of the opinion that what this court said in the case of Cerealine Mfg. Co. v. Bates, 7 Cir., 101 F. 272, 281, is applicable. There the court said: "Growth of the art of cereal foods, unless something distinctively new in specie is contributed, is the growth of common public thought, and, therefore, independently of the process * * * belongs to the public."

In our case, Braunbeck, in the intermediate stage, produced a food product of dried flake-like character similar to that of Johnson and, in the final state, a flour resulting from his having reduced the flakes to flour. Braunbeck's intermediate product was equivalent in every way to Johnson's and while Johnson's final product was not the same, there was nothing new in specie over the general knowledge of the art, the only difference being a matter of degree, that is, that flour lumps more readily than flakes. This was not invention.

We think the decision of the District Court was correct, and it is affirmed.