**KEUFFEL & ESSER CO. v. PICKETT & ECKEL, Inc., et al.**

**No. 47 C 913.**

United States District Court
N. D. Illinois, E. D.

March 22, 1949.

Dawson, Ooms, Booth & Spangenberg, Chicago, Ill., for plaintiff.

Parker & Carter, Chicago, Ill., for defendants.

SHAW, District Judge.

In this case all questions have been eliminated except the validity of United States patent No. 2,170,144 and No. 2,422,649. Those parts of the original pleadings concerning unfair competition and all other matters have been eliminated, and as to the main question defendants freely admit that if the patents are valid they have been infringed.

Furthermore, the questions involved have been reduced to an exceedingly narrow point by the plaintiffs' theory of the case. Quoting from their brief:

"The present case is of the type, not infrequently encountered, in which a long existing need is finally satisfied by an exceedingly simple change giving greatly improved results * * *." and again quoting from plaintiffs' brief:

"We ground our case on the view, sound in reason and well supported in the decided cases and in human experience, that, no matter how small the change, if investigation of the historical facts shows that the final step was of real practical advantage and cured existing deficiencies and that this advantage had been desirable for many years during which the deficiencies existed and during which all of the elemental parts that entered into the final product were freely available, the only reasonable conclusion * * * is that the final step was not already within the grasp of the man skilled in the art—else why, with the materials at hand and advantages desired, was it not done before." and again quoting from the plaintiffs' brief:

"The improvement lies in the cooperative arrangement of the scales and the parts of the rule with one another. It was this

change in cooperative arrangement that gave the rule the practical facility of use required by the engineer."

The case thus automatically reduces itself to a decision as to whether "an exceedingly simple change," no matter how small, "cured existing deficiencies" and whether or not "the cooperative arrangement of the scales and the parts of the rule with one another" amount to patentable invention.

It is probably because the underlying principles are so old that the prior art mentioned in this case is rather limited. In 1912, Beckett, in patent No. 1,042,755, disclosed what amounted to a slide rule built in circular form which he described as a device for mechanically multiplying and dividing and computing roots and powers of numbers. This appears to be about the only mechanical change that has been patented and does not appear to have gained any great commercial success, probably because the decreasing size of the concentric rings necessitates finer, and therefore more difficult to read calibrations toward the center. No other basic change has been made in the ancient principle involved so far as the prior art submitted to this Court discloses.

In 1915, in patent No. 1,153,565, Oberg disclosed what he called a computing device which from the drawings appears to be an ordinary slide rule and which he describes as a computing device of the slide rule character which has for its object to provide a rule simple in construction and of great efficiency and accuracy. He refers to the old Mannheim Rule in which the logarithmic scales are arranged in one continuous line and the length of the scales limited by the length of the rule, but as he says in his improvement, the logarithmic scales are split up into a series of parallel longitudinal lines, etc.

In 1916, Cuntz, in patent No. 1,168,059, disclosed a conventional slide rule with extra scales which could be used for many different forms of calculation, and to increase the size of the scales for greater accuracy, and to facilitate the reading of the results by a tabulation of the values with the positions in which they lie.

In 1924, Puchstein, in patent No. 1,487,805, disclosed a slide rule with a device for making vector calculations and which shows by its drawings and specifications that calculations may be made as to addition, subtraction, multiplication, division, powers and roots of vectors, and also as to logarithms, circular sines, cosines, tangents, etc., as well as hyperbolic cosines, tangents, etc., of vectors, and also to make the inversed calculations.

In 1917, Jones, in patent No. 1,214,040, makes further disclosures concerning the circular form of the slide rule which are not particularly material in this case.

In 1921, Stillman, in patent No. 1,364,154, disclosed a new form of slide rule claimed to produce greater accuracy but not particularly relevant to the issues in this case. Likewise, Stillman, in No. 1,364,154, claims greater accuracy.

In 1925, Larkey, in patent No. 1,525,752, obtained a patent on an invention relating to subdivided scales.

In 1941, Hirano, in patent No. 2,235,106, obtained a patent on an invention to provide a superior precision slide rule.

In 1942, Tyler, in patent No. 2,283,473, disclosed a slide rule which he described as intended to provide a tangent scale covering an increased range of angles, associated with other logarithmic scales to reduce mechanical manipulation and to provide a sine scale of extended length cooperating with logarithmic scales of novel arrangement to permit more convenient solution of problems providing the sines of angles while reducing the mechanical manipulations required in using the rule; also to provide a new arrangement with a scale graduated in accordance with the logarithms of logarithms of numbers greater than unity associated with a novel arrangement of the well-known logarithmic scales resulting in a more convenient solution of problems.

Some other prior art has been cited to the Court, but it is entirely beyond the scope of this case, and enough has already been mentioned to show the trend and development of the slide rule problem.

That development has occupied a long period of time, as the slide rule itself was invented sometime in the 17th Century and its mechanical features have not been changed in 300 years except for the circular form above mentioned. During that period of 300 years the science of mathematics has advanced materially and is advancing from day to day. Logarithms and logarithms of logarithms have been invented and tables of them have been published which are readily available to any mathematician requiring their use. Roots and powers have been carried out extensively and other mathematical devices, such as vectors, have come into common use in certain branches of mathematics and engineering. Many problems of wing design, problems in electrical engineering, air flow, water flow, high compressions and densities, higher temperatures, problems of relationships and ratios in modern mechanics and complicated mechanical engineering feats, a list much too long to be mentioned, have all been developed and expanded since the invention of the slide rule. As these developments have progressed the principles of the slide rule have been applied to them, but those mechanical principles remain the same as they were 300 years ago. It is apparent from this record that any highly educated mathematician can make his own slide rule to fit any particular circumstance of his requirements without altering the basic principle of the combination of body and slide and runner, with such scales shown thereon as may be necessary for his particular requirements.

That these requirements may vary with different engineering problems is abundantly clear from the record, and it is also clear from the record that the number of scales that may be put on one rule is unlimited except as practical mechanics and problems of production may occur. Perhaps it is this unlimited possibility of the underlying principle that has led to the confusion of the present case and apparently to some confusion in the Patent Office.

The slide rule is a calculating machine (see Encyclopedia Britannica). There has been a total failure in this case, and apparently in the Patent Office, to distinguish (1) between the slide rule as a machine, and (2) the science of mathematics. The machine has remained the same for hundreds of years, while the science of mathematics has expanded and developed almost unbelievably. The machine lends itself to the science of mathematics, but it has remained stationary and basic, while mathematical minds have applied it to many new and useful theories of pure science.

Well known comparisons might be cited. An ordinary carpenter's square is nothing more than a right angle piece of steel with calibrations on the inside and outside of each arm, and yet with it a carpenter can lay out and mark for cutting an enormous number of shapes and angles, and if sufficiently skillful in its use can cut a rafter or board to fit any place that may be required. The same is also true of other common tools, such as the plumb, the level, and the compass, going back to the days of the building of King Solomon's Temple. So it is with the slide rule. It is a marvelously ingenious basic invention but it has been in the public domain for hundreds of years, and the extension of its use has been through the discovery of new mathematical principles to which it has so readily lent itself. The development, however, has been in the science of mathematics rather than the mechanics of the rule. Certainly no one has or can claim a patent on tables of logarithms, sines, cosines, tangents, cotangents, vectors or other commonly understood and well-known mathematical values. It may be that new tables will be developed concerning the theory of relativity, the quantum theory of mechanics or perhaps concerning fissionable material or atomic energy, and if mathematicians succeed in reducing these to different formulae they will probably be put on scales to be used with slide rules.

It has been many times held by the Circuit Court of Appeals of this Circuit that for a patent to be valid the patentee must have invented or discovered a new and useful art, machine, manufacture, or composition of matter, or a new and useful improvement thereof not known or used by

others prior thereto; that there must be a novelty and utility and originality. The very act of invention must be a discovery and application in a new and useful way of something not previously known. Reference to the opinion by Judge Sparks in Harley C. Loney Co. et al. v. Ravenscroft et al., 7 Cir., 162 F.2d 703; National Slug Rejectors v. A. B. T. Mfg. Corporation, 7 Cir., 164 F.2d 333, written by Judge Evans, and to the recent language of Judge Kerner in Mead Johnson & Co. v. Hillman's 7 Cir., 135 F.2d 955, on page 958, will better express what I have in mind than I can do for myself.

█ It is clear that there is nothing in the way of invention in the two slide rules in question. There is nothing in the nature of discovery, authorship or novelty. The most that can be claimed within the limit of language of the plaintiffs' own brief is a greater utility, and this advance, if such it be, was demonstrated in open court to be slight indeed. Professor Hartung demonstrated before the Court that he could work any of the problems exemplified by the patents in question on a slide rule at least twenty years old, suffering only the inconvenience of turning it over from time to time to read from the opposite face, and even that inconvenience appeared to be slight and of no material duration of time. Professor Hartung is a Professor of Mathematics of the University of Chicago, and with a piece of paper visually demonstrated to the Court the basic principles of a slide rule and demonstrated how any competent mathematician could construct one. His testimony was in no way contradicted or impaired and it was fully believed by the Court. In fact, there was no material disagreement among the experts on either side of the case. It was admitted in Court and the Court finds that there is no mathematical reason why any scale on any rule could not be fitted into a slot and removed to accept another strip containing some different mathematical scale. The rule would remain the same and the principle upon which it operates would not differ.

On the question of novelty and invention the Court finds as a fact that long prior to either patent in question (1928) the wit-ness Kruger disclosed to the plaintiff the very elements now incorporated in the claimed patents and requested a bid from them as to supplying a quantity of such rules, and that the same witness shortly thereafter published a scientific article making like disclosures and leading to the same result. It is also shown by the exhibits, which are very numerous, that the principles involved were well known to mathematicians long prior to either patent, and particular reference should be made to the so-called Bell Laboratories Rule (Defendants' Exhibit 20) and other rules on which the trigononetric functions are shown on the slide. However, as to these the Court finds that it makes no difference in the results obtained whether they are shown on the body of the slide or on the front or on the back, because its functions remain the same and the results are identical.

It is my conclusion and I find that the rules shown by the two patents in question are devoid of discovery, authorship or novelty, and that their improvement, if any, in utility is very slight. The ruling necessarily follows that the two patents are invalid.