**PHOTOCHART et al. v. PHOTO PATROL, Inc., et al.**

**PHOTO PATROL, Inc., et al. v. PHOTO-CHART et al.**

No. 12640.

United States Court of Appeals
Ninth Circuit.

June 11, 1951.

Rehearing Denied July 20, 1951.

Mason & Graham, Collins Mason and William R. Graham, all of Los Angeles, Cal., for Photochart.

Don Marlin, William H. Levit, Los Angeles, Cal., for Lorenzo del Riccio.

Townsend & Townsend, Stephen S. Townsend and Julian Caplan, all of San Francisco, Cal., for Photo Patrol, American Teletimer Corp. and Robert A. Oswald.

Before STEPHENS, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

Plaintiffs (appellants) Lorenzo del Riccio and Photochart Corporation brought this action charging patent infringement and unfair competition. The patent in suit (Reissue Patent No. 22,881) is a method of photographically recording the finish of horse races. The idea embodied in the patent was conceived by del Riccio and was referred to throughout the trial as the del Riccio method. A full understanding of the issues on this appeal necessitates a brief outline of the facts.

Del Riccio first employed the method in suit in July, 1937. At that time del Riccio had in his employ one Harry Belock, a photography engineer whose duties were designing, constructing and operating photo-finish cameras. Belock terminated his employment with del Riccio in January or February of 1938 and in October of that year applied for a patent on a method of photographing the finish of horse races by the use of "slit photography." Patent No. 2,257,100 was issued to Belock as a result of this application, which patent he assigned to American Teletimer Corporation, one of the defendants in this action.[1]

Del Riccio did not apply for a patent on his method until March 20, 1939—a period of approximately six months after the Belock application. Del Riccio received a patent on June 1, 1943. The patent in suit is a reissue of that original patent. Photochart Corporation is the licensee of del Riccio, and is engaged in the business of photographing the finish of horse races.

In 1941 Robert Oswald, a defendant-appellee, was employed by Photochart as a photo-finish camera operator. He later became a licensee of Photochart and operated on his own at various racing events, particularly county fairs, using a camera he had constructed and with which he practiced the del Riccio method. About 1947 Oswald began to operate under a license from American Teletimer, operating at county fairs and still using the camera he had constructed. Sometime around this period he became associated with defendant-appellee, Photo Patrol, a competitor of Photochart. At the time this litigation was commenced Oswald was operating a camera for Photo Patrol at a race track known as Golden Gate Fields,[2] under a licensing agreement with American Teletimer Corporation. Oswald was using the camera he had constructed and also one furnished by American Teletimer.

The patent in suit is designated as a method of photographically recording the order of passage of moving objects. It involves the use of a device, old in the art, known as the "slit camera."[3] This camera, in place of a shutter, has a narrow slit in the film masking plate, which plate is located between the film and the camera lens. When the camera is in operation the film is continuously moving and continuously exposed through the narrow slit. The principal use of the slit camera is to take panoramic scenes by moving the camera in a sweeping motion simultaneously with the movement of the film. If the camera is held in a fixed position only those objects in motion will be recorded on the film. This feature of the slit camera is utilized by the del Riccio method.

In practicing the del Riccio method the camera is placed in an elevated position on the outside of the race track. As the horses approach the finish line the film in the camera is moving in the direction of the image of the horses (which is opposite to the direction the horses are moving). The speed of the film is adjusted to the speed of the image of the horses. In a counter-clockwise race the finish line of the track and the optical axis of the camera lens[4] are aligned with the right hand edge of the narrow slit. The effect of this alignment is that the film does not commence to record a picture of a horse until the horse's nose reaches the finish line. In other words the entire area of the track up to the finish line is eliminated from the zone of photography. By this system the horse whose nose first commences to be recorded on the film is determined to be the winner.

---

1. No appeal was taken from that part of the judgment which holds that American Teletimer has not infringed appellants' patent. It may also be noted that Belock was not made a party to this litigation.

2. The operators of this track, The Pacific Turf Club, were named as defendants in this action but were dismissed from the suit by stipulation of the parties.

3. The slit camera was patented in 1901, Pasquarelli Patent No. 683,573.

4. The optical axis of the lens refers to an imaginary line that goes through the heart of the lens where there is no refraction or bending of light.

It is the claim of appellants that the normal use of the slit camera would be to align the center of the slit with the optical axis of the lens and the finish line; that because the zone of photography enlarges in a cone shape away from the lens of the camera the field of vision is a fan-shaped area of the track which is bisected by the finish line. Under these conditions, it is said, it is impossible to get an accurate picture of the winning horse because of the problem of angular vision. For example, a horse on the far side of the track (in reference to the location of the camera) would come into the field vision and might appear to be the winning horse even though a horse on the side of the track adjacent to the camera actually crossed the finish line first. The del Riccio method, which masks out the entire area of the track up to the finish line by the alignment mentioned, has eliminated this problem of angular vision and is claimed to have achieved a degree of accuracy never obtained before.

Appellees admit that they align one edge of the slit with the finish line of the track but contended that their method disregards the optical axis of the lens. Oswald testified that an accurate photograph of the finish can be taken without bringing the optical axis into the alignment.

Appellants in their complaint and supplemental complaint charged infringement of the claims of six patents owned or controlled by them and further charged infringement of the Belock patent. Several of the patents were dropped from the suit prior to the trial and others were withdrawn sometime prior to judgment. The amended judgment of the district court recites that all claims except claims 1, 2, 7 and 8 of Reissue Patent No. 22,881 were withdrawn prior to judgment. The charge of unfair competition was based on the claim that Belock and Oswald had acquired trade secrets of the appellants while employed by the latter in a confidential relationship and had appropriated these trade secrets to their own use without the consent of appellants. This charge of unfair competition is not urged as a separate issue on this appeal but only to show aggravated infringement.

The district court made findings of fact and conclusions of law and entered judgment for the defendants. The substance of the court's findings is that Reissue Patent No. 22,881 is invalid for want of invention and that the subject matter thereof was old in the art more than one year before the del Riccio patent application was filed. It further found that it was within the reasonable and expected skill of anyone working in the art.

On the issue of infringement the court found that appellees had not aligned the optical axis with the edge of the slit and the finish line and therefore had not infringed. The court found that no trade secrets were involved and that the defendants had not engaged in unfair competition. By an order the court denied the defendants' request for attorneys' fees and the defendants appeal from that order.

In the posture the case reaches us we are concerned only with claims 1, 2, 7 and 8 of Reissue Patent No. 22,881, and with the appeal by the defendants from the order of the district court denying attorneys' fees.

It is not contended that the patent in suit contains any new or different element not existing in the prior art. If its validity is to be upheld it must be on the theory that the del Riccio method is a combination of old elements which constitute invention. There is no exact standard by which a court may determine when a combination of old elements constitutes invention and when it is within the mechanical skill of one working in the art. The most recent opinion of the Supreme Court on combination patents expresses the view that, "courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127. The test to be applied to such patents is that the combination must perform some new or different

function—one that has unusual or surprising consequences.[5] It is our view that the patent in suit fails to meet this severe test and does not constitute invention. The most that can be said for the patent in suit is that it rearranges the elements of the slit camera in such a manner that in the performance of their respective functions a higher degree of accuracy is obtained. But perfection of workmanship, however useful or convenient, does not constitute invention. Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L. Ed. 58; Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973; Hollywood-Maxwell Co. v. Street's of Tulsa, 10 Cir., 183 F.2d 261; Shaffer v. Armer, 10 Cir., 184 F.2d 303. Each element of the slit camera utilized in the del Riccio method is performing the same function it has always been known to perform. Del Riccio has changed the position of one of these elements (the narrow slit) which results in a restricted field of vision coincident on one side with the finish line. This result, however useful, has added nothing to the total stock of knowledge. In our view this variation of an old device is within the reasonable skill of one working in the art.

■ Appellants contend that in all the years the slit camera has been in existence many improvements have been made on it but no one discovered the method in suit except del Riccio. This, it is said, indicates that more than skill was involved. However, there is no showing in the evidence that there was any long felt want for this improvement nor any wide-spread effort to solve the problem of angular vision which the del Riccio method eliminated,[6]

Toledo Pressed Steel Co. v. Standard Parts, supra. Commercial success is relevant only in a doubtful case and will sometimes tip the scales in favor of invention, Jungersen v. Ostby & Barton Co. et al., 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235. In a case, such as this, where invention is plainly lacking, commercial success is immaterial.

■ Having determined that the patent lacks invention it is unnecessary for us to determine the questions of infringement and unfair competition.[7]

We come now to the appeal by the defendants from the order denying attorneys' fees. The basis of this claim is that the plaintiffs unduly complicated the issues by reckless charges of patent infringement, by failure to take any steps prior to trial to reduce the number of issues, and by evading any effort of the defendants to reduce the issues. Because of these circumstances, it is claimed that the defendants were obliged to expend more time and expense in preparing a defense than was necessary and that the trial court erred in denying attorneys' fees. 35 U.S.C.A. § 70 provides in part:

"* * *. The court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment on any patent case."

■ While there is some evidence to support the defendants' contentions the facts of the case are not so clear cut that we are able to say that the trial judge abused his discretion in denying an award of attorneys' fees. Many of the cases relied on by defendants are cases affirming an award made by the district court. Dubil et al. v. Rayford Camp & Co. et al., 9 Cir., 184 F.2d 899, relied on by defendants,

---

5. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Toledo Pressed Steel Co. v. Standard Parts, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334.

6. The essence of the del Riccio method is alignment of one edge of the slit and the optical axis of the lens with the finish line to mask out the entire area

of the track up to the finish line. The Australian Patent to Cowdry, No. 104,-941 (1938), discloses a shield located in front of the lens of a motion picture camera the purpose of which is to cut off from the camera's "vision" the entire area of the track up to the finish line.

7. As noted before the latter question is not asserted here as a separate issue but only to show aggravated infringement.

recognizes the rule that an appellate court should not interfere with the discretionary power of the trial court except where there is an abuse of discretion amounting to caprice or an erroneous conception of law on the part of the trial court. Defendants have misread the decision of this court in Buck v. Bilkie, 9 Cir., 63 F.2d 447. The decision did not change the judgment with respect to attorneys' fees but modified it only by adding damages which were "mandatory" under the statute.

The judgment of the district court is affirmed.